UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JEFFREY SCOTT ZIEGLER,<br><br>               Plaintiff,<br><br>    v.<br><br>CORRECTIONAL INDUSTRIES, et al.,<br><br>               Defendants. | No. 3:20-CV-05288-SAB<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, MOTION TO STRIKE** |

      Before the Court are Defendants' Motion for Summary Judgment, ECF No. 122, and Defendants' Motion to Strike, ECF No. 132. Defendants Correctional Industries, Kelly Downing, Jodie M. Wright, Scott Light, Thomas L'Heureux, Sara Smith-Kariko, Sheridan Roberts, Margaret Gilbert, Tammy Schooley-Koski, Shane L. Evans, Ryan Herrington, Keith Parris, Dan. L. Van Ogle, Robert Schreiber, Jamie Newton, and Erin Lystad are represented by Sarah Brisbin. Defendants Leeland Rogge, Sasha Bangs and Dennis Dahne have not made appearances. Mr. Montambo has not been served. The motions were considered without oral argument.

      After considering the arguments, briefs, and caselaw, the Court **grants** Defendants' motions.

//

//

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, MOTION TO STRIKE** # 1

# BACKGROUND

This case was filed in the United States District Court for the Western District of Washington on May 6, 2020. Plaintiff is a prisoner at the Stafford Creek Correction Center ("SCCC") in Aberdeen, Washington, and is proceeding *informa pauperis*. He originally brought his claims against Defendants with co-plaintiff, Alvin Hegge, but Mr. Hegge was terminated from the proceeding on November 5, 2021. This case was transferred to the Eastern District of Washington on October 25, 2023. Plaintiff filed his operative Amended Complaint on March 11, 2024.

Plaintiff brings this case alleging Defendants at SCCC have a practice of withholding necessary medical care. He claims Defendants individually violated his Eighth Amendment rights under 42 U.S.C. § 1983 and Washington State Constitution Article 1 § 14, stemming from incidents and medical care from 2014 through 2018. He seeks compensatory and punitive damages.

Along with his claims of deliberate indifference, Plaintiff also claims the preapproval system managed by the Department of Corrections ("DOC") Care Review Committee ("CRC") makes regular "arbitrary and medically unsound decisions." As such, Plaintiff has been denied treatment recommended by his SCCC physicians.

On October 28, 2014, Plaintiff suffered a back injury while incarcerated and working for the Washington DOC at SCCC's wood shop. He first reported the incident to his SCCC primary care provider, Physician Assistant Certified Scott Light on June 5, 2015. What transpired in the years following was a result of several medical problems and treatment plans spanning decades.

Plaintiff's medical records show he has a history of back injuries. In 1991, he suffered injury in a motor vehicle crash. In 2003, he filed a claim with the Department of Labor and Industries for an injury. MRI scans of his lumbar spine show degenerative disc disease, and more records reveal a history of thoracolumbar strain. In 2010, he also reported low back pain and neck pain with

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, MOTION TO STRIKE** # 2

nerve numbness in his hands and problems dropping items.

While incarcerated at Airway Heights Correction Center in 2012, Plaintiff reported chronic cervical neck pain radiating through his shoulder blade and arm and pinched neck nerves. In 2013, he received a prescription for Cymbalta, generic name duloxetine, for his chronic pain. He remained on Cymbalta after transferring to SCCC. At one point, Plaintiff complained he suffered from sleepwalking due to the Cymbalta prescription. Light reviewed the side effects with Plaintiff and did not find sleepwalking to be among the effects. The side effects of Cymbalta, as provided by Plaintiff, include effects on sleep (insomnia or drowsiness) and abnormal dreams; the list did not discuss sleepwalking or related issues.

In his report on the October 2014 injury in the woodshop, Plaintiff described to Light back pain, and a physical exam revealed muscular issues. X-rays of his cervical and thoracic spine showed degenerative changes, and Light ordered muscle relaxers and physical therapy for Plaintiff, who agreed to the treatment plan. Over the course of the next few months, Light met with and monitored Plaintiff's progress. Plaintiff complained of more nerve pain and numbness, and Light worked with Plaintiff to manage the medication and treatment plan. Plaintiff and Light also filed a claim for the October 2014 injury with the state Department of Labor and Industries.

In March 2016, Labor and Industries approved Plaintiff's request for an Independent Medical Exam, and Defendant Leeland Rogge, an orthopedic surgeon, conducted the exam. Dr. Rogge is not an employee of the state. After the exam, he diagnosed Defendant with degenerative disc disease and chronic dorsolumbar strain. He reviewed the records for the October 2014 injury and concluded that incident involved muscle strain and required exercise and ibuprofen. The chronic symptoms were a result of Plaintiff's degenerative disc disease and long term back problems prior to 2014.

Light noted Plaintiff reported improvements to his health and movement

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, MOTION TO STRIKE** # 3

throughout 2016, only reaggravating back pain due to exercises in the SCCC yard. He was encouraged to continue his course of medication and physical therapy.

On November 1, 2016, Labor and Industries closed Plaintiff's claim following a request for additional treatment for neck pain. The claim was originally opened for Plaintiff's back strain and degenerative disc disease and not neck pain. Plaintiff requested Light order an MRI on his neck, but Light declined because after reviewing the medical records and Dr. Rogge's assessment, he found the MRI medically unnecessary. Light ordered more physical therapy and a new thoracic spine x-ray. Light continued follow-up care, and he had another orthopedist, Dr. Kenneth Sawyer, review the x-rays. Dr. Sawyer found no notable change between Plaintiff's previous thoracic x-rays and the new imaging.

On February 24, 2017, Light sought additional guidance from the Facility Medical Director Dr. Kariko and continued Plaintiff's physical therapy plan.

On March 24, 2017, Plaintiff fell out of bed and struck the right side of this body. He was sent to the Grays Harbor Emergency Room, where x-rays revealed a fractured 11th rib. Plaintiff returned to SCCC the same day and was admitted to the infirmary for pain management care.

On March 28, 2017, Defendant Schooley-Koski was assigned to Plaintiff as a nurse assistant to help him walk about the infirmary for his recovery. Schooley-Koski considered Plaintiff a fall risk and used a gait belt to protect him. Plaintiff claims the gait belt further bruised and damaged his rib cage, and Schooley-Koski went against general medical recommendations not to use a gait belt for patients with broken ribs. To avoid rib 11, Schooley-Koski placed the gait belt high on Plaintiff's chest.

On April 4, 2017, Light reviewed a follow-up x-ray, which revealed Plaintiff had broken ribs 5–11 on his right side. He initially did not complain of pain but called a medical emergency the same day and was admitted back into the infirmary with severe chest pain. The following day, Plaintiff was observed by medical staff

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, MOTION TO STRIKE** # 4

walking about the infirmary and carrying a chair across the room for a telephone call. He was discharged on April 6, 2017, with a walker for support.

On April 10, 2017, Plaintiff filed a grievance against Schooley-Koski for the use of the gait belt, claiming she caused the additional broken ribs. He complained that Schooley-Koski did not have permission to use the gait belt, forced him to walk while he was in pain, and berated him for complaining of the pain. Defendant Dahne reviewed the grievance and found Schooley-Koski acted within normal policies for a patient who is at risk of blood clots and falling. Defendant Evans also reviewed the grievance and found though Schooley-Koski did not have explicit permission to use the gait belt, her use of the belt fell within "core recommendations" for treating Plaintiff's injury. The grievances were also reviewed by Defendant Gilbert. Finally, Light reviewed the records and disagreed with Plaintiff's assertion that the gait belt caused the additional breaks.

Plaintiff filed several more grievances on the matter, including for retaliatory action. They were reviewed, but Plaintiff did not complete the grievance process.

Plaintiff continued to use the walker for support until at least March of 2018, and he continued to receive follow-up care on his chronic conditions from Light. At one point, Light questioned Plaintiff's need for the walker after reviewing security footage and observing Plaintiff moving about without trouble and using his walker as a "skateboard" to glide down halls. Plaintiff kept the walker.

In January 2018, Plaintiff saw Dr. Miller, an outside neurologist. He conducted a study of Plaintiff's upper and lower extremities but did not find evidence any symptoms were caused by nerves in his cervical or lumbar spine. He concluded that the next step "might" be spinal imaging. Light took the MRI request to the CRC.

The CRC is made up of DOC primary care physicians, physician assistants, and advanced registered nurse practitioners, and it reviews the medical necessity of proposed health care plans for incarcerated individuals. Proposed interventions

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, MOTION TO STRIKE** # 5

receive one of three assignments: Level I (authorized and medically necessary), Level II (in some cases medically necessary), or Level III (unauthorized and not medically necessary). The panel members rely on professional judgment and the Department's Health Plan in making their decisions. Treating consultants may bring medically unnecessary treatments to the CRC for review, which may or may not be approved depending on the panel's assessment of the treatment's impact on the patient's quality of life and relief of symptoms.

Upon review of Plaintiff's request, the CRC found the MRI not medically necessary and denied his request.

In April 2018, Light transferred Plaintiff's primary care to the Facility Medical Director Dr. Ryan Herrington, ending the period of inquiry for the present claims.

## MOTION STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

In addition to showing there are no questions of material fact, the moving party must also show it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving

party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).

When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants Correctional Industries, Wright, Light, L'Heureux, Downing, Smith-Kariko, Roberts, Gilbert, Schooley-Koski, Evans, Herrington, Parris, Ogle, Schreiber, Newton, and Lystad, work as Stafford Creek Correction Center employees. They filed their Motion for Summary Judgment requesting the Court dismiss Plaintiff's claims as frivolous under 28 U.S.C. § 1915 and because Plaintiff's claims cannot survive the Eighth Amendment standard for a 42 U.S.C. § 1983 claim, nor the cruel punishment standard for Washington Constitution Article 1 § 14 for any named Defendants.

First, for a prisoner proceeding *informa pauperis*, a Court shall dismiss a case at any time if it finds "the action or appeal— (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. §1915(e)(2). Based on Plaintiff's noted injuries and Amended Complaint, the Court finds his case is not frivolous or malicious.

Plaintiff argues the Motion for Summary Judgment is improper because the parties have not completed discovery. However, Fed. R. Civ. P. 56(b) indicates a party may file for summary judgment "at any time until 30 days after the close of all discovery." Defendants' motion is properly filed.

The Court now moves to the Eighth Amendment claim.

//

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, MOTION TO STRIKE** # 7

*Eighth Amendment Claim*

To establish an Eighth Amendment violation for deliberate indifference under 42 U.S.C. § 1983, a prisoner must demonstrate "deliberate indifference to serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In doing so, they "must satisfy both the objective and subjective components of a two-part test." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (citing *Wilson v. Seiter*, 501 U.S. 294, 298–99 (1991)). First, a prisoner must show a prison official deprived them of "minimal civilized measure of life's necessities," and second, the official "acted with deliberate indifference in doing so." *Id.* The corrections officer must have been aware of the risk to the inmate's health and safety when they disregarded it. *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004).

Further, to establish an Eighth Amendment claim based on medical care, a prisoner must show "the course of treatment the official chose was medically unacceptable under the circumstances and that the official chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 785–86 (9th Cir. 2019).

Plaintiff's claims cannot survive the deliberate indifference standard against any Defendants. At no time during his incarceration or medical treatment was he deprived of the "minimal civilized measure of life's necessities." *Hallett*, 296 F.3d at 744. Quite the contrary, no reasonable jury could find his medical treatment fell outside the medically acceptable course of treatment given his circumstances. *Edmo*, 935 F.3d at 785–86.

Plaintiff identifies several medical issues and incidents in his Amended Complaint. He suffered a back injury in 2014 while working for DOC—though he did not report the injury until roughly eight months later—and he suffers chronic back pain and at times finds the pain debilitating. During the period of inquiry, his primary care physician Defendant Light monitored Plaintiff's condition and treated him with physical therapy, pain medication, various x-rays and scans, and even

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, MOTION TO STRIKE** # 8

sought outside opinions from other doctors, both DOC doctors and private practitioners. While in DOC care, the doctors were able to diagnose Plaintiff with degenerative disc disease, and he was provided regular care for its treatment.

Further, Plaintiff's medical records show he suffered back injuries in the years leading up to his incarceration, and the injuries suffered while imprisoned further aggravated his already deteriorating condition.

Perhaps the largest allegation Plaintiff claims involves his treatment for broken ribs he suffered during a fall from his bunk into a table.

First, he alleges Defendant Light failed to listen to his concerns that his chronic pain medication was causing sleepwalking, a danger for someone sleeping on an upper bunk. But Defendant Light investigated the medication, and a medical review of the side effects did not support Plaintiff's concerns.

Second, he claims Defendant Schooley-Koski treated him with deliberate indifference when she used a gait belt on him, knowing he suffered a broken rib. The instructions for use of a gait belt discourage its use with patients suffering broken ribs. However, the x-ray he received while in the emergency room indicated he broke rib 11, and Defendant Schooley-Koski placed the belt high under his arms and away from the broken rib. He filed grievances with the DOC, and upon review, they found Defendant Schooley-Koski acted within normal recommendations for a patient at risk of developing blood clots, like Plaintiff. Defendant Evans conducted the first review of the grievance, and a second-level review of the grievance found the use of the gait belt to assist with walking were a part of the "core recommendations" for Plaintiff's treatment. A second x-ray in the SCCC infirmary later revealed fractures to ribs 5-10. Plaintiff's attending physicians then determined a walker was more appropriate given the additional fractures, but the physicians did not attribute the breaks to the use of the gait belt. Plaintiff was allowed to use the walker for months after the injury and despite evidence he no longer needed the support.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, MOTION TO STRIKE # 9**

Plaintiff's claims against Defendant Schooley-Koski do not rise to the level of deliberate indifference to medical need. When she used the gait belt, she treated Plaintiff based on the facts she had in front of her—he suffered from a fracture of rib 11 and needed to walk to avoid blood clots. This met the standard of care for the SCCC infirmary and did not breach the constitutional standard of care.

Finally, Plaintiff claims the CRC wrongfully denied him imaging for his neck in 2018. Outside neurologist Dr. Miller conducted a review of Plaintiff's upper and lower extremities at the request of Defendant Light and did not find evidence of nerves causing pain in the cervical or lumbar spine. He stated imaging "might" be a next step. When Defendant Light took the request for imaging to the CRC, the panel reviewed it and based on its levels for necessary and unnecessary care, it concluded Plaintiff's imaging request to be unnecessary based on the facts and rejected the request. Plaintiff was not denied necessary care.

Plaintiff continued to receive regular check-ups, chronic pain management, physical therapy, and additional consultations through the period of inquiry. At no point did any Defendants deviate from the acceptable standard of care, nor subject Plaintiff to a deprivation of the minimal necessities for life.

Plaintiff also claims certain Defendants, including Downing, Roberts and Schooley-Koski, acted with deliberate indifference when they engaged in "nefarious actions of emotional abuse, slander, defamation of character and bullying." But he does not provide any further details. As it relates to these facts, the claim is not a sufficient pleading under Fed. R. Civ. P. 8(a).

Defendants have shown there is no genuine dispute of material fact for Plaintiff's claims as to each Defendant, and they are entitled to judgment as a matter of law. No reasonable jury could find that Defendants violated Plaintiff's Eighth Amendment rights. As such, the Court **grants** all Defendants summary judgment.

Finally, the Court declines to extend supplemental jurisdiction over the

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, MOTION TO STRIKE** # 10

remaining state law claim and **dismisses** Plaintiff's Washington State Constitution Article 1 § 14 claim.

## DEFENDANTS' MOTION TO STRIKE

Defendants seek to strike Plaintiff's Surreply, ECF No. 131, which Plaintiff filed after Defendants filed their Reply for the Motion for Summary Judgment.

Fed R. Civ. P. 12(f) allows for a court to strike a motion if it is "redundant, immaterial, impertinent, or scandalous" either on the court's own action or through a motion by a party. Western District of Washington LCivR 7(g) allows a party to file a surreply to request the court strike certain material, subject to the following conditions:

(1) The party must file a notice of intent to file a surreply as soon after receiving the reply brief as practicable.
(2) The surreply must be filed within five days of the filing of the reply brief and shall be strictly limited to addressing the request to strike. Extraneous arguments or a surreply filed for any other reason will not be considered.
(3) The surreply shall not exceed 1,050 words or, if written by hand or typewriter, three pages.
(4) No response shall be filed unless requested by the court.

Plaintiff's Surreply fails to adhere to Local Rules because it brings additional "extraneous" arguments not included in Plaintiff's Response to Defendant's Motion for Summary Judgment. *See McIntire v. Hous. Auth. of Snohomish Cnty.*, No. C22-1757, 2024 WL 1328697, at *1 (W.D. Wash. Mar. 28, 2024) (unreported) (citing *GB Int'l v. Crandall*, 403 F. Supp. 3d 927, 931 n.2 (W.D. Wash. 2019). Plaintiff also did not file a notice of intent to file as required; the Surreply contains more than 400 pages of briefs and record filings in excess of the 1,050-word limit; and Plaintiff filed it on July 9, 2024, more than five days after Defendants filed their Reply.

As such, the Court **grants** Defendants' Motion to Strike Plaintiff's Surreply.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, MOTION TO STRIKE** # 11

# NO AMENDMENT

The Court has granted Plaintiff several opportunities to amend his complaint since this case was filed in 2020, and the Court finds further amendment would be futile. *See Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987), *superseded on different grounds by* 28 U.S.C. § 1915(e)(2) *and as stated in Aktar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendants' Motion for Summary Judgment, ECF No. 122, is **GRANTED**.

2. The remaining state law claim is **DISMISSED, without prejudice**.

3. Defendants' Motion to Strike, ECF No. 132, is **GRANTED**. Plaintiff's Surreply, ECF No. 131, is **STRICKEN**.

4. The District Court Executive is directed to enter judgment in favor of **all** Defendants and against Plaintiff on the Eighth Amendment claim.

5. All deadlines and hearings are **STRICKEN**.

**IT IS SO ORDERED.** The District Court Clerk is hereby directed to enter this Order, provide copies to *pro se* Plaintiff and counsel, and **close** the file.

**DATED** this 21st day of August 2024.

_____
Stanley A. Bastian
United States District Judge

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, MOTION TO STRIKE** # 12